BERZON, Circuit Judge,
concurring:
I concur in the per curiam opinion in full. I write separately to emphasize why it is essential that the courts scrupulously guard a child’s constitutional right to remain at home absent a court order or true exigency.
Taking a child from his or her home, family, and community constitutes a separate trauma, in and of itself. Our cases so recognize, and so ordinarily permit that trauma to occur only after a court determination that the alternative is worse.
Nearly two decades ago, we described the purposes underlying constitutional rer strictions on removal of children from their homes without any judicial supervision:
The problem of child abuse is a critical one, with deep personal and social costs. For too long, intra-familial sexual abuse was considered to be a “private” matter. Today, the law is changing....
Because the swing of every pendulum brings with it potential adverse consequences, it is important to emphasize that in the area of child abuse, as with the investigation and prosecution of all crimes, the state is constrained by the substantive and procedural guarantees of the Constitution. The fact that the suspected crime may be heinous— whether it involves- children or adults— does not provide cause for the state to ignore the rights of the accused or any other parties. Otherwise, serious injustices may result. In cases of alleged child abuse, governmental failure to abide by constitutional constraints may have deleterious long-term consequences for the child .and, indeed, for the entire family. Ill-coAsidered and improper governmental action may create significant injury where no problem of any kind previously existed.

Wallis v. Spencer, 202 F.3d 1126, 1130-31 (9th Cir. 2000).
In other words, for children in neglect and abuse proceedings, “entry into foster care br[ings] them the additional trauma of separation from their Homes and often their communities.” 42 Ú.S.C. § 5111(a)(2) *1082 (findings supporting the federal Child Abuse Prevention and Treatment Act). “The events of the day of placement constitute a crisis for children because everything in their lives .changes and the children are overwhelmed with feelings of abandonment,' rejection, worthlessness, guilt, and helplessness.” Rosalind D. Fol-man, “I Was Tooken”: How Children Experience Removal from Their Parents Preliminary to Placement into Foster Care, Adoption Quarterly, no. 2, 1998, at 7, 12 (evaluating the experiences of 90 children removed from their homes as a result of abuse and neglect).
Research confirms that “unexpectedly being snatched by the police or protective service workers traumatize^] ... children.” Id. at 29; see also Amy J.L. Baker et al., Foster Children’s Views of Their Birth Parents: A Review of the Literature, 67 Children and Youth Servs. Rev. 177, 180-81 (2016) (conducting a meta-analysis of- 27 studies of the experiences of children and youth in foster care, and finding strong evidence that children remain attached to their homes and families despite abuse). For small children especially, being taken from a home and family by a stranger is a profoundly frightening and destabilizing experience, even if that home and family are flawed.
By assuring close judicial supervision of even temporary governmental interference in the parent-child relationship—absent reasonable cause to believe a true, identifiable, serious exigency exists—our case-law implements the Fourth and Fourteenth Amendment’s protection-of vulnerable-children and their parents. Because our decision today reaffirms that critical principle, I concur.